***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| v.  : | Crim. Action No.: 14-251 (FLW) |
| : | |
| David Wax, : | **OPINION** |
| Defendant. : | |

**WOLFSON, Chief Judge**:

Defendant David Wax ("Defendant"), a prisoner serving an 84-month sentence at FCI Fairton, seeks compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release from FCI Fairton to home confinement based on underlying health issues, which he argues place him at a heightened risk for complications if he contracts COVID-19. The Government opposes Defendant's motion, contending that Defendant has not demonstrated extraordinary circumstances warranting his release. For the reasons stated below, Defendant's motion is **DENIED**.

I.   **BACKGROUND**

Defendant's criminal conviction and sentence stem from his involvement in a scheme to kidnap Orthodox Jewish men and forcibly obtain from them a Jewish divorce document known as a "get." In connection with that scheme, on May 6, 2014, Defendant pleaded guilty to one count of conspiracy to commit kidnapping in violation

of 18 U.S.C. § 1201(c)  *See* ECF No. 40, Plea Agreement. Subsequently, this Court sentenced Defendant to a term of imprisonment of 84 months, to be followed by two years of supervised release.  *See* ECF No. 44, Judgment. At the time of filing this motion, Defendant had served approximately 47 months of his 84-month sentence, and his projected release date is May 4, 2022.

On April 20, 2020, Defendant's wife submitted a request for compassionate release on her husband's behalf to the Warden at FCI Fairton.  *See* Def Br., Ex. A, April 20, 2020 email from Judy Wax. On May 18, 2020, Defendant filed the instant motion for Compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A).[1] To date, the BOP has not responded to Defendant's request.

---

[1] At the time Defendant filed his motion, thirty days had not yet passed since the request was filed with the Warden, thus, Defendant had not fully exhausted the necessary administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)(dismissing motion for compassionate release for failure to comply with  18 U.S.C. § 3582(c)(1)(A)'s thirty day waiting period for filing a motion in district court).  However, the thirty day waiting period expired on May 21, 2020, and thus, the Court need not dismiss Defendant's motion for failure to exhaust.  *See United States v. Sellers*, Crim. No. 10-434 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)(noting that although the thirty day waiting period had not yet passed at the time defendant filed his motion for compassionate release, the waiting period had expired as of the time of the court's opinion and thus "the exhaustion period under the statute [was] no longer a hurdle to this Court's decision").

Defendant is a 58-year old male, who suffers from hypertension, obesity, and pre-diabetes. *See* Def. Br., Ex. B, Letter from David J. Ogun, M.D. Defendant's doctor opines that "obesity has been shown to be the greatest risk factor for death from this pandemic, even greater than older age," and recommends that Defendant quarantine at his home with his family. *Id*. Moreover, Defendant highlights data from the CDC which shows that older adults, with underlying medical conditions particularly obesity, are at higher risk of complications from COVID-19, as well as a study of coronavirus patients in New York which allegedly demonstrated that of the patients who became severely ill from coronavirus "57%, had high blood pressure, 41% were obese and 34% had diabetes." *Id*. at 3-4. Accordingly, Defendant argues that his medical conditions and age place him at particularly high risk of contracting COVID-19, and incurring serious complications.

Further, Defendant maintains that the conditions at FCI Fairton render it impossible for him "to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection." *Id*. at 10. In that regard, Defendant highlights that he cannot self-quarantine, maintain self-distancing protocols, or utilize hand sanitizer. *Id*. According to Defendant, COVID-19 is spreading through FCI Fairton, and as of June 19, 2020, seventy-four inmates and four members of the prison's staff have tested positive for the virus. *See* ECF

3

No. 58, Def. Second Supplemental Letter, June 19, 2020.  Based on these circumstances, Defendant requests that I reduce his sentence and release him from FCI Fairton or permit him to serve the remainder of his sentence on home confinement.  *Id*. at 11.

The Government opposes Defendant's motion and argues that there are no extraordinary or compelling reasons to release Defendant to home confinement at this time.

## II. DISCUSSION

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence.  *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (quoting 18 U.S.C. §3582(b))).  One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).  The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment.  The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the

4

>>defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
>>(i)  extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). In other words, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 WL 19728862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress did not define the term "compelling and extraordinary reasons," but instead directed the Sentencing Commission to define the term. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be

5

considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). While the Sentencing Commission previously defined that term as it relates to the Bureau of Prison's ("BOP") discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act. *See United States v. Rodriquez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018). Nevertheless, the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Rodriquez*, 2020 WL 1627331, at *4 (alteration in original) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019)). The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1. Relevant to Defendant's motion, a defendant may show extraordinary and compelling reasons for release based on a medical condition where (1) "[t]he defendant is suffering from

6

a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," or (2) he or she is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious function or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* Moreover, as the First Step Act instructs, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

Here, Defendant has not shown that there are extraordinary and compelling reasons justifying his release. As an initial matter, Defendant does not satisfy any of the criteria identified in U.S.S.G. § 1B1.13, cmt. n.1(A), as he is not elderly, does not suffer from a terminal illness or a serious condition that impairs his ability to care for himself within a correctional environment. Further, Defendant's medical conditions are not sufficiently severe to establish a compelling basis for his release. First, Defendant has not demonstrated that his pre-diabetes, as opposed to diabetes, is an increased risk factor for coronavirus. Second, while individuals who suffer from obesity[2] and high blood pressure,

---

[2] The Centers for Disease Control and Prevention ("CDC") recognizes severe obesity and pulmonary hypertension as illnesses

7

such as Defendant, are at a higher risk of suffering from complications after contracting COVID-19, it appears that the BOP has provided Defendant with regular and consistent medical care. In that connection, the Government obtained Defendant's medical records from the BOP and provided them to the Court.[3] These records confirm that Defendant does, in fact, suffer from hypertension and obesity, albeit not sever obesity, but they also indicate that the BOP is adequately managing Defendant's medical care. Furthermore, according to his medical records, it appears that Defendant has been placed in quarantine since April 29, 2020, in order to mitigate the risk of contracting COVID-19.

Defendant highlights other cases involving younger inmates with less severe medical conditions, and asserts that he "merits compassionate release at least as much of these and many other individuals." *See* ECF No. 56 Def. Reply Br. at. 1-4. However, the determination of whether an inmate should be granted compassionate release is an individualized inquiry and those

---

that may put individuals at high risk for severe illness from COVID-19. Groups at Higher Risk for Severe Illness, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 23, 2020). However, Defendant's BMI is 36 and does not meet the CDC's threshold for "severe obesity," which is is defined as a BMI of 40 or higher. *Id*.

[3] Defendant's medical records were not publicly filed on the docket, and they were separately provided to the Court and defense counsel.

cases, which involve other individuals residing in wholly different facilities, are not factually comparable. Moreover, a number of other courts have denied requests for compassionate release by inmates with both similar and more severe medical conditions, who are older than Defendant. *See United States v. Falci*,. Crim. No. 17-228, 2020 WL 3410914, at *4 (D.N.J. June 22, 2020) (denying motion for compassionate release where defendant was a 60 year old man who suffered from "obesity, hypertension, diverticulosis, diverticulitis, history of smoking, gallbladder removal, colon reconstruction"); *Durante v. United States,* Crim. No. 11-277, 2020 WL 2520280, at *2 (D.N.J. May 18, 2020) (denying motion for compassionate release where defendant was a 66-year old man with hypertension); *United States v. Alexander,* No. Crim. No. 19-32, 2020 WL 2507778, at *1 (D.N.J. May 15, 2020)(denying a motion for compassionate release where the defendant suffered from hypertension and obesity but medical records showed that BOP was "adequately managing [his] medical care"); *United States v. Fry*, Crim. No. 11-141, 2020 WL 1923218 (D. Minn. Apr. 21, 2020) (denying motion for compassionate release where defendant was a 66-year-old man suffering from obesity, heart disease, and high blood pressure).

While the Court is sympathetic to Defendant's concerns about the potential complications which may arise if he were to contract COVID-19, Defendant's medical situation is not sufficiently severe

9

such that the potential risk posed by COVID-19 renders his case unique or exceptional. *United States v. Viteri*, Crim. No. 19-00044, 2020 WL 3396804, at *5 (D.N.J. June 19, 2020) (denying motion for compassionate release because "Defendant has not shown that his claimed medical conditions render him any more vulnerable than other, non-high-risk inmates to the effects of COVID-19"). As the Third Circuit has explained, "the mere existence of "COVID-19 in society and the possibility that it may spread ... cannot independently justify compassionate release." *Raia*, 954 F.3d at 597; *see also Durante*, 2020 WL 2520280, at *4 ("The Third Circuit has thus made clear that the possibility that Covid-19 may spread to [the defendant's] jail unit cannot, without more, justify compassionate release."). Accordingly, Defendant has failed to establish an "extraordinary and compelling reason for his release under §3582(c)," Defendant's motion warrants denial for that reason alone.

Furthermore, consideration of the factors set forth in Section 3553(a) also weigh against granting Defendant's petition. The following section 3553(a) factors are applicable to my decision:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

10

>> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)   to afford adequate deterrence to criminal conduct;
>>
>> (C)   to protect the public from further crimes of the defendant; and
>>
>> (D)   to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective matter.
>
> . . . [and]
>
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1), (a)(2), (a)(6).

Defendant asserts that "his current personal history and characteristics favor resentencing," and emphasizes that as part of his cooperation and plea, at least ten other individuals were convicted for their roles in the kidnapping scheme. Def. Br. at 11. In that regard, Defendant has also submitted a letter in support of his release from Rabbi Zvi Boyarsky, Director of the Aleph Institute, a nonprofit organization that provides support and rehabilitation to incarcerated individuals. *See* ECF No. 57, Def. Supplemental Reply.  Rabbi Boyarksy's letter details Defendant's considerable remorse, his observations of Defendant's significant progress while incarcerated, and the impact of Defendant's incarceration on his family members and their

11

continued support for Defendant. *Id*. While Defendant's rehabilitation and family support is commendable, I, nonetheless, find a continued need for the sentenced imposed. Defendant's remorse and significant rehabilitation do not mitigate the need for a sentence which appropriately reflects the seriousness of Defendant's offense and promote respect for the law. *See United States v. Nesbitt*, Crim. No., 2020 WL 3412577, at *3 (E.D. Pa. June 22, 2020) (finding that defendant's "family support" and "efforts toward rehabilitation" did outweigh other section 3553(a) factors which weighed in favor of denying compassionate release). As noted above, Defendant's conviction stems from his involvement in a long undetected criminal organization which arranged for violent kidnappings and beatings. I cannot overemphasize the serious nature of Defendant's crimes. Although Defendant ultimately pleaded guilty to conspiracy to commit kidnapping, he actually participated in the violence, including luring and beating a victim, as he admitted in his testimony during the trial of his co-conspirators. Furthermore, Defendants' sentence was the product of a downward departure and falls below the recommended Guideline range of 87 to 108 months. *See generally* ECF No.44 Sentencing Transcript. Defendant's cooperation and willingness to take responsibility for his actions were significant contributors to Defendant's 84 month sentence and further reducing Defendant's sentence – by more than one-quarter – would undercut the

12

seriousness of the offense at issue, Defendant's very active role in the scheme, and the need for general deterrence. *See United States v. Bleicher*, Crim. No. CR 19-99, 2020 WL 2744606, at *4 (D.N.J. May 27, 2020) (noting that defendant's sentences was the product of a downward departure from the Guideline range and a further reduction "would be sharply in contravention of § 3553(a)(2)"). Accordingly, I find that the Section 3553(a) factors also weigh against Defendant's release.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.

|  |  |
|---|---|
| | /s/ Freda L. Wolfson |
| | Freda L. Wolfson |
| June 25, 2020 | U.S. Chief District Judge |